**Ashot KHATCHATRIAN, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. 01CV8183.**

United States District Court, C.D. California.

April 18, 2002.

Clint William Feddersen, Clint W. Feddersen Law Offices, Glendale, CA, for Plaintiff.

Robert F. Keehn, Joanna M. Todd, Galton & Helm, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MATZ, District Judge.

### INTRODUCTION

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Ashot Khatchatrian (alternatively, "Plaintiff" or "Khatchatrian") and Defendant Continental Casualty Company (alternatively, "Defendant" or "CNA"). Both Plaintiff and Defendant seek summary judgment on each of Plaintiff's three causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and negligence. In addition, Defendant seeks summary adjudication that Plaintiff, even if ultimately the prevailing party, is not entitled to recover punitive damages as pled in the Complaint. Because the Court finds summary judgment for Defendant is warranted, Defendant's motion is GRANTED. As such, Plaintiff's cross motion is DENIED.

### FACTS

The material facts are not in dispute. Plaintiff is the sole named beneficiary on an accidental death and dismemberment policy issued by Defendant to Evengy Varioushkine. (Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s Response") ¶¶ 2, 3). The policy became effective August 1, 1999. (Def.'s Response ¶ 2). The policy provides accidental death benefits in the amount of $251,000 when "a covered Injury results in loss of life of an Insured Person within 365 days after the date of the accident." (Plaintiff's Statement of Genuine Issues ("Pl.'s SGI") ¶ 2; Trottier Decl., Ex. 1 at 2). Under the policy, "injury" is defined as "bodily injury caused by an *accident*

which occurs while the Insured Person is covered under the policy and that results, directly and independently of all other causes, in loss covered by the policy." (*Id.*) (emphasis added). The policy provides several exclusions, most significantly an exclusion of coverage "for any loss caused by or resulting from... *sickness and disease...*" (Pl.'s SGI ¶ 4; Trottier Decl., Ex. 1 at 3) (emphasis added).

Mr. Varioushkine died on April 2, 2001, while covered under the policy. (Pl.'s SGI ¶ 5; Def.'s Response ¶ 5). The death certificate, signed by A. Kazanchian, M.D., states that the immediate cause of death was "intracranial hemorrhage" due to "uncontrolled hypertension" due to "renal cancer." (Pl.'s SGI ¶ 5; Trottier Decl., Ex. 3).[1] In addition, the death certificate states that "Metastasis to Spine, Spinal Cord" was a significant condition contributing to death. (*Id.*). In his Death Report, dated April 3, 2001, Dr. Kazanchian noted that the patient suffered from "severe uncontrolled hypertension" and was on multiple medications for blood pressure control. (Pl.'s SGI ¶ 29; Trottier Decl., Ex. 13 at 59). Dr. Kazanchian also stated that, "Despite all efforts the patient had intracranial hemorrhage secondary to very high and uncontrolled BP and brain metastases and he was pronounced dead on April 02, 2001." (*Id.*)

On or about May 16, 2001, Defendant received Plaintiff's claim for accidental death benefits under the policy. (Pl.'s SGI ¶ 8; Trottier Decl., Ex. 2).[2] After reviewing the file, Defendant wrote Plaintiff on June 4, 2001 requesting a copy of the death certificate, ambulance report, police report and either an emergency room report or statement from the physician describing the injury. (Pl.'s SGI ¶ 9; Trottier Decl., Ex. 4). That same day, Defendant also wrote to Dr. Kazanchian requesting specific information on the insured's death. (Pl.'s SGI ¶ 10). On or about June 22, 2001, Dr. Kazanchian responded to Defendant's letter. (Pl.'s SGI ¶ 11; Trottier Decl., Ex. 6). In pertinent part, Dr. Kazanchian wrote that, "Although Mr. Varioushkine had renal cancer with status post nephrectomy and high blood pressure per my professional opinion the death of my patient was an accident." (*Id.*). Thereafter, on June 28, 2001, Defendant again wrote Dr. Kazanchian requesting that he explain why he concluded the death of Mr. Varioushkine was an accident. (Pl.'s SGI ¶ 12; Trottier Decl., Ex. 7). On June 29, 2001, Dr. Kazanchian responded that his diagnosis of the injury was "intracranial hemorrhage" or "cerebro-vascular accident." (Pl.'s SGI ¶ 13; Trottier Decl., Ex. 8). Accordingly, he concluded that the insured's death should be considered "accidental" because the cause of the death was a "cerebro-vascular accident." (*Id.*).

On July 5, 2001, Plaintiff's attorney wrote Defendant and demanded that benefits be paid under the policy. (Pl.'s SGI ¶ 14; Trottier Decl., Ex. 9). Thereafter, on or about July 27, 2001, after receiving the insured's medical records, Defendant referred the matter to its Los Angeles counsel for review. (Pl.'s SGI ¶ 15; Trottier Decl. ¶ 12).[3] Defendant's counsel reviewed the matter and interviewed Dr. Kazanchian under oath. (Pl.'s SGI ¶ 17; Todd Decl. ¶ 12). Dr. Kazanchian ex-

---

1. Both sides characterize an "intracranial hemorrhage" as a "stroke."

2. The claim was dated April 23, 2001. (Trottier Decl., Ex. 2). However, Plaintiff does not dispute that it was not received by the defendant until on or about May 16, 2001.

3. Plaintiff's attorney acknowledged this fact in a letter to the Defendant on July 27, 2001. (Pl.'s SGI ¶ 16; Trottier Decl., Ex. 10).

plained that the insured had undergone surgery for renal cancer prior to his death and that one kidney had been removed. (Pl.'s SGI ¶ 18; Todd Decl., Ex. 12 at 7–8). After the surgery, Dr. Kazanchian saw the insured on March 12, 2001 and March 23, 2001 for follow-up. (Pl.'s SGI ¶ 19). During those visits, Dr. Kazanchian prescribed two medications, Norvasc and Lopressor, for the purpose of controlling the insured's high blood pressure and hypertension. (Pl.'s SGI ¶ 19). According to the doctor, people with one kidney, such as the insured, are prone to developing high blood pressure. (Pl.'s SGI ¶ 21).

On the day of the insured's death, Dr. Kazanchian noticed blood spots on Mr. Varioushkine's upper lip, a sign of very high blood pressure. (Pl.'s SGI ¶ 20). Dr. Kazanchian further testified that the insured's stroke was likely due to the bursting of a blood vessel that occurs due to high blood pressure. (Pl.'s SGI ¶¶ 22, 23; Todd Decl., Ex. 12 at 18). When questioned about his prior letter to the defendant in which he stated that it was his opinion that the insured's death was an "accident," Dr. Kazanchian stated that his use of the term "accident" was based simply on his conclusion that the insured's stroke was "unexpected." (Pl.'s SGI ¶ 25; Todd Decl., Ex. 12 at 21).

Based on Dr. Kazanchian's testimony and the terms of the policy, Defendant concluded Mr. Varioushkine's death was not "accidental" so as to be covered under the policy. (Pl.'s SGI ¶¶ 26, 27; Trottier Decl., Ex. 11). For that reason, on September 6, 2001, Defendant informed Plaintiff's attorney that it was denying the claim for benefits. (*Id.*). Thereafter, on September 12, 2001, Plaintiff filed suit against the defendant in Los Angeles Superior Court. On September 20, 2001, the action was removed to this Court based on diversity jurisdiction.

Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing and negligence. The gravamen of those claims is that Defendant breached the terms of the policy by refusing to pay accidental death benefits and that such refusal violated the implied covenant of good faith and fair dealing because Defendant failed to investigate Plaintiff's claim thoroughly and prolonged the claims settlement process for several months. (Complaint ¶¶ 13, 18, 21). Similarly, Plaintiff's negligence claim alleges that Defendant was under a duty to investigate Plaintiff's claim thoroughly and in a timely manner and that Defendant's conduct breached that duty. (Complaint ¶ 25). On these motions, both Plaintiff and Defendant seek summary judgment as to each cause of action.

## MOTION STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evi-

dence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.; Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (*citing Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## DISCUSSION

### I. THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM.

As both sides acknowledge, Plaintiff's breach of contract claim ultimately depends on whether the insured's death was the result of an "accident" and thus covered under the terms of the policy. Plaintiff contends that Mr. Varioushkine's death was the result of an "accident" and thus covered under the policy because it was unexpected, unintended and happened out of the usual course of events. (Opp'n. to Def.'s Mot. at 3). Conversely, Defendant argues the death was not covered under the policy because there was no "accidental event" that caused the insured's death and the death was subject to the "sickness or disease" exclusion of the policy. (Def.'s Mot. at 11). There are no factual disputes as to the circumstances or causes of Mr. Varioushkine's death. As such, the sole question before the Court is whether the death is the type of injury covered under the policy. The Court finds it is not.

As stated *supra*, the accidental death and dismemberment policy for which Plaintiff is beneficiary provides coverage for an "injury" that results in loss of life of

an Insured Person. (Plaintiff's Statement of Genuine Issues ("Pl.'s SGI") ¶ 2; Trottier Decl., Ex. 1 at 2). Under the policy, "injury" is defined as "bodily injury caused by an *accident* which occurs while the Insured Person is covered under the policy and that results, directly and independently of all other causes, in loss covered by the policy." (*Id.*) (emphasis added). Although the term "accident" is not defined in the policy, it is clearly distinct from "any loss caused by or resulting from...*sickness and disease,*" which is expressly excluded from coverage under the policy. (Pl.'s SGI ¶ 4; Trottier Decl., Ex. 1 at 3) (emphasis added).

California courts have not specifically addressed whether, under these facts, an insured's death is "accidental" for the purposes of accidental death insurance coverage. In fact, California courts have been unable to produce a clear definition of "accident." *Geddes & Smith, Inc. v. St. Paul–Mercury Indem. Co.,* 51 Cal.2d 558, 563–64, 334 P.2d 881 (1959) ("No all-inclusive definition of the word 'accident' can be given."); *Alessandro v. Massachusetts Casualty Insur. Co.,* 232 Cal.App.2d 203, 207–209, 42 Cal.Rptr. 630 (1965) (recognizing the various definitions of "accident" that have been used in California law). Nonetheless, a review of the case law on the subject illustrates that California courts have been unwilling to find that an injury or death was "accidental" unless it was in some manner caused by an event or occurrence unforeseen and external[4] to the insured. *Alessandro,* 232 Cal.App.2d at 207, 42 Cal.Rptr. 630 (affirming the trial court's judgment that the insured's death was not an accident because there was "no evidence of falling, slipping, overexertion, or of any external force striking the body of the appellant"); *Williams v. Hartford Ac-*

*cident and Indem. Co.,* 158 Cal.App.3d 229, 204 Cal.Rptr. 453 (1984) (affirming summary judgment for the insurance company where the plaintiff suffered an unforeseen retinal tear that was aggravated by jogging because the activity of jogging did not cause the tear and could not be characterized as an "accident"); *Zuckerman v. Underwriters at Lloyd's, London,* 42 Cal.2d 460, 267 P.2d 777 (1954) (affirming a jury verdict for the defendant-insurer where the insured was found dead in his car from bronchopneumonia and there was no evidence of an unforeseen, external event causing the insured's death); *Olinsky v. Railway Mail Assoc.,* 182 Cal. 669, 675, 189 P. 835 (1920) (reversing a jury verdict for the beneficiary where the insured suffered successive hemorrhages after swimming but there was no evidence that the insured slipped or suffered some other similar accident while swimming).

In addition, in cases where California courts have found an injury to be "accidental," some external, unforeseen event was the proximate, if not the sole, cause of the injury. *E.g., Brooks v. Metropolitan Life Insur. Co.,* 27 Cal.2d 305, 309, 163 P.2d 689 (1945) (affirming the trial court's decision to grant a new trial to the plaintiff where there was evidence that the proximate cause of the insured's death was burns received in a fire of accidental origin and thus the death would be covered under the insured's accident insurance policy); *Arata v. Calif.-Western States Life Insur. Co.,* 50 Cal.App.3d 821, 823–24, 123 Cal.Rptr. 631 (1975) (affirming judgment for the beneficiary where the insured's death was proximately caused by bleeding that commenced when the insured slipped and fell);

---

**4.** Webster's Ninth New Collegiate Dictionary defines "external" as "arising or acting from outside." The Court adopts this definition, which would exclude a process or occurrence that takes place within the body of the insured.

*Slobojan v. Western Travelers Life Insur. Co.,* 70 Cal.2d 432, 442–43, 74 Cal.Rptr. 895, 450 P.2d 271 (1969) (affirming the trial court's determination that the insured's death was accidental where the insured, a deputy sheriff, died after pursuing a suspect on foot and thereby aggravating a preexisting condition by producing unusual physical stress on the body); *Mariscal v. Old Republic Life Insur. Co.,* 42 Cal. App.4th 1617, 1624, 50 Cal.Rptr.2d 224 (1996) (affirming the trial court's finding that the insured's death was accidental where the insured's heart failure resulted from a car accident).[5]

■ Here, the undisputed facts are that Mr. Varioushkine's death was due to a stroke suffered as a result of high blood pressure and hypertension. (Pl.'s SGI ¶¶ 5, 29; Trottier Decl., Ex. 3, 13). Plaintiff does not contend that any unforeseen event taking place outside the body of Mr. Varioushkine—*i.e.,* an external event—was the proximate cause of the insured's stroke. Nonetheless, Plaintiff argues Mr. Varioushkine's death was an "accident" and thus covered under the terms of the policy because the stroke was unexpected, unintended and happened outside the usual course of events.[6] Plaintiff cites no California case law in support of this position, but instead relies exclusively on *Bornstein v. J.C. Penney Life Insur. Co.,* 946 F.Supp. 814 (C.D.Cal.1996). In *Bornstein,* a federal district court interpreting California law addressed a claim for benefits by the beneficiary of one accidental death and dismemberment ("AD & D") insurance policy and two life insurance policies. The life insurance policies did contain a statement that accidental death did not include death resulting from disease, which is similar to the provision in the AD & D policy at issue here. *Bornstein,* 946 F.Supp. at 816. The AD & D policy, unlike the policy here, did "not provide a specific exclusion for death resulting in part from disease..." *Id.* at 819. The insured died during open heart surgery as a result of a Cerebral Vascular Accident (stroke). *Id.* at 816.[7] The defendant refused to pay on any of the policies. The district court ignored the differences in the various policies and declared that, "The issue in this case distills down to whether [the decedent] died as the result of an accident." *Id.* at 818. In denying the insurer's motion for summary judgment, the district court defined an "accidental" death as one where "the death of the insured was *objectively unexpected* and *unintended by the insured* and *happened out of the usual course of events...*" *Id.* at 819 (emphasis added). Under this definition, the court found there was a triable issue of fact as to whether the stroke was accidental because there was evidence that

5. The Court acknowledges that in several of these cases the external, unforeseen event aggravated a preexisting medical condition of the insured and thereby led to the death or injury. However, in each case, the court emphasized that the external, unforeseen event was a proximate cause of the death or injury.

6. In support of this factual contention, Plaintiff relies on the declaration of the treating physician, Dr. Kazanchian. The declaration states that, "Although Mr. Varioushkine was suffering from renal cancer at the time of his death, no one expected or intended that he would die from cerebro-vascular accident." (Kazanchian Decl. ¶ 5). Defendant objects on the grounds that Dr. Kazanchian lacked personal knowledge of what others intended or expected. Defendant's objection is well founded and Dr. Kazanchian's statement that "no one" expected or intended the insured's death is stricken.

7. The court noted that there were no unexpected events that occurred during the surgery. *Id.* at 817.

the death was unexpected, without the intent of the insured and unusual. *Id.* at 820.

The *Bornstein* test is both too broad and too imprecise; nearly all deaths are unintended by the insured, whether they are "expected" is impractical to ascertain and so is whether they happen outside of the usual course of events. Under *Bornstein*, a death or injury may be "accidental" and thus covered by an AD & D insurance policy even though no unforeseen event external to the insured was a proximate cause of the death or injury. This is an expansive definition of "accidental" death or injury and under the California authorities cited *supra*, it is not warranted. True, under California law, a death or injury may be accidental and thus covered under the type of insurance policy at issue here even where the external event is not the sole cause of the death. But this Court believes that if the cause of death was a process or occurrence that took place solely within the decedent's body, it cannot be "external" and thus cannot be "accidental." To extend coverage to situations where, as here, there is no such external, unforeseen event that is a proximate cause of the death or injury would convert AD & D policies into standard life insurance.

Moreover, even assuming Mr. Varioushkine's death could be termed "accidental," it is subject to the policy's exclusion for death or injury caused by "sickness or disease." The death certificate, the death report and Dr. Kazanchian's testimony state that the insured's stroke was caused by high blood pressure, severe hypertension and renal cancer. (Pl.'s SGI ¶¶ 5, 23, 23, 29; Trottier Decl., Ex. 3, Ex. 13 at 59; Todd Decl., Ex. 12). There is no other causal factor in the record. As such, the Court finds no jury acting rationally could conclude that the insured's death falls outside the "sickness or disease" exclusion of the policy, because high blood pressure, severe hypertension and renal cancer each meet the definition of "disease." [8]

For the foregoing reasons, the Court finds the insured's death was not the result of an "accident" so as to fall within the insured's accidental death and dismemberment insurance policy. Moreover, even assuming the insured's death could be termed "accidental," Plaintiff is not entitled to recovery under the terms of the policy because the death was caused by "sickness or disease." As a result, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's claim for breach of contract.

## II. THE DEFENDANT IS ALSO ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND NEGLIGENCE.

■ As stated *supra*, both Plaintiff's breach of the implied covenant of good

---

**8.** The Court notes the following two definitions of "disease:" (1) "a condition in which bodily health is seriously attacked, deranged, or impaired, and as an alteration of state of the human body or some of its organs or parts, interrupting or disturbing the performance of vital functions" (*Zuckerman*, 42 Cal.2d at 475, 267 P.2d 777); and (2) "an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors, to specific infective agents, to inherent defects of the organisms, or to combinations of these factors." (Webster's Third New International Dictionary (1966)).

faith and fair dealing and negligence claims concern Defendant's alleged failure to investigate Plaintiff's claim thoroughly and in a timely manner. (Complaint ¶¶ 13, 18, 21, 25). As this Court has found Plaintiff was not entitled to benefits under the terms of the policy, Plaintiff's remaining claims fail as a matter of law. *McMillin Scripps North Partnership v. Royal Insur. Co. of America*, 19 Cal.App.4th 12, 19 Cal. App.4th 1215, 1222–23, 23 Cal.Rptr.2d 243 (1993) (holding that absent the insured's primary right to receive the benefits of the contract "the auxiliary implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings"); [9] *Waller v. Truck Insur. Exchange*, 11 Cal.4th 1, 35, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (holding that absent coverage there can be no action for breach of the implied covenant of good faith and fair dealing); *Gibson v. Government Employees Insur. Co.*, 162 Cal. App.3d 441, 448, 208 Cal.Rptr. 511 (1984) (holding that the insurer does not owe a fiduciary duty to the insured broader than the terms of the contract in force between them).

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, Defendant's Motion for Summary Judgment is GRANTED [10] and Plaintiff's Motion for Summary Judgment is DENIED.[11]

9. In *McMillin Scripps*, the California Court of Appeal did recognize that there may be unusual circumstances where an insurance company could be liable to its insured for tortious bad faith despite the fact that the insurance contract did not provide for coverage. *McMillin Scripps*, 19 Cal.App.4th 12, 19 Cal. App. 4th at 1222, 1223, 23 Cal.Rptr.2d 243.

The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

However, Plaintiff does not (and could not) argue that such circumstances are present in this case.

10. Docket No. 12.

11. Docket No. 13.