**Robert NAGEL, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, etc. et al., Defendants.**

**No. CV 78–2442–DWW.**

United States District Court,
C. D. California.

April 29, 1980.

Kilpatrick, Clayton, Meyer & Madden, R. J. Kilpatrick, Long Beach, Cal., for plaintiff.

Booth, Mitchel, Strange & Smith, Hugh Helm, Los Angeles, Cal., for defendant Continental Casualty.

## MEMORANDUM

DAVID W. WILLIAMS, District Judge.

Mrs. Eileen Nagel entered Costa Mesa Memorial Hospital at approximately 11 A.M. on June 23, 1977, and at 6 A.M. on June 24th was found dead in bed by a nurse making her hourly patient check. The autopsy surgeon rendered the opinion that the cause of death was aspiration of gastric contents, due to, or as a consequence of diverticulitis, coli and colitis. In lay language it is thought that the patient strangled upon her own vomit.

The surviving spouse of the deceased has brought this action to recover the face value of $100,000 from the defendant who wrote a group policy covering employees of General Motors Corporation for a bodily injury caused by an accident resulting directly and independently of all other causes in the loss of her life. It is the plaintiff's contention that the aspiration was unexpected and unforeseen and thus accidental.

It is the defendant's contention that, (a) death came from natural causes, or (b) even if death was caused by aspiration, it was not unexpected or unforeseen.

Mrs. Nagel was 56 years of age at the time of her death and had been plagued with health problems for many years. She had a history of epilepsy which resulted in seizures which were kept in satisfactory control by the medication dilantin. She had undergone multi–surgeries including a hysterectomy, a mastectomy, and the removal of her adrenal glands. Her other ailments included emphysema, nephritis, acute colitis, and diverticulitis. It was thought that the cancer was spreading and that it involved her bone structure. She had been under a course of chemotherapy.

The plaintiff testified that he and his family went to a restaurant for dinner on the day before the wife entered the hospital and then took an automobile ride. After they returned home, his wife became ill and vomited. She complained of a low back pain. Near midnight she vomited a second time and they suspected food poisoning. When Mrs. Nagel awakened at 6:30 A.M. the following morning, she again vomited and the discharge had a fecal odor. The husband called for her regular physician who was out of the city, and after a delay of an hour or two Nagel was contacted by a physician who was covering for their doctor. After hearing the nature of the patient's complaint this doctor had Mrs. Nagel admitted to the hospital because he suspected an intestinal obstruction. Plaintiff visited his wife several times on June 23 at the hospital, finally leaving at 9 P.M. The only food ingested by the deceased on that day was a soft diet consisting of jello and liquids. Nagel testified that his wife's fever went down and she showed general improvement. Two doctors saw Mrs. Nagel on June 23, one of them visiting her on two or three occasions, but there was nothing about her condition that suggested to them or to the nursing staff that she was critically ill, or in a life–threatening condition which would call for her to be moved to an intensive care unit. Because she had fainted earlier in the afternoon while in the x–ray room and had been found by one

doctor on the bathroom floor at approximately 10 P.M. in a confused state, she was placed in a Posie jacket to prevent her falling out of bed. This is a soft restraint which, according to conflicting testimony, permits the patient to raise herself to almost a total sitting position, or to turn to one side, but does not allow her to turn completely over. Hospital records show that there was intravenous feeding of Mrs. Nagel during the night and that either an orderly or a nurse checked her each hour until 5 A.M. and found her sleeping. The 6 A.M. bed–check brought about the discovery of her demise. There was no vomitous material on her body or in the bed, and there was no physical evidence that she had struggled in the Posie jacket. It is undisputed that the autopsy found gastric contents in the lungs, and it seems credible that this was due to aspiration.

The defendant strongly urges that the death was from natural causes stemming from the long history of illnesses suffered by this insured. It points to two of her ailments that could be deemed incurable, i. e., the cancer, and the adrenal insufficiency. There is, however, no plausible evidence that when the decedent entered the hospital on the day before she died, she was in a life–threatening condition from any of the horribles that afflicted her over the years. On the contrary, she was robust, mobile, and had a good appetite. There is nothing in the evidence which tends to show that her death came from any of the causes the defendant would attribute, and I must conclude that the plaintiff has succeeded in showing that it is more likely so than not so that the cause of death was from aspiration of gastric contents, and that this was accidental within the meaning of the policy.

It is crucial in this case to note that the language of the policy covers "bodily injury caused by an accident . . . resulting directly and independently of all other causes." This is not a policy using language "death caused by external, violent and accidental means." cf. *Spott v. Equitable Life Insurance Company*, 209 Cal.App.2d 229, 25 Cal. Rptr. 782 (1962).

This Court prefers to follow the reasoning of *Cobb v. Aetna Life Insurance Com-*

*pany,* 274 N.W.2d 911, 915 (Minn.1979) citing *Commercial Insurance Co. of Newark N. J. v. Orr,* 379 F.2d 865 (8th Cir. 1967). The *Orr* Court had before it a policy worded similarly to the policy here and it upheld a jury finding of accidental death where the decedent, an alcoholic, suffocated after aspiration of vomitous following drinking of alcohol. That Court found that the failure of the epiglottis to close was unusual, unexpected, and an unforeseen circumstance even following a drinking bout.

Judgment is ordered entered in favor of the plaintiff. Plaintiff shall file proposed findings and form of judgment by May 9, 1980.